THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHANCE BRUMFIELD,<br><br>          Plaintiff,<br><br>    v.<br><br>JAMES DYMENT et al.,<br><br>          Defendants. | CASE NO. C10-1247-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 33) and the parties' various responses and replies. Having thoroughly considered the parties' briefing and the relevant record, the Court denies the motion for the reasons explained herein.

**I.    BACKGROUND**

This action arises out of a dispute between a pedestrian and a police officer. Plaintiff Chance Brumfield alleges that he and a companion were walking through an intersection when Officer James Dyment drove his unmarked patrol car through the intersection. Prior to entering the intersection, Officer Dyment activated his emergency equipment. The car and Plaintiff contacted one another and displaced the side-view mirror. Although the parties do not dispute the presence of a collision, they dispute the cause and events thereafter. Plaintiff contends that Officer Dyment struck Plaintiff through no fault of Plaintiff's conduct and then, knowing that Officer Dyment was the cause of the collision, falsely arrested Plaintiff for damaging the car.

Officer Dyment contends that Plaintiff, angered that Officer Dyment had activated his emergency equipment and entered the intersection, reached out and struck the mirror as the car passed. Officer Dyment stopped the car and arrested Plaintiff for damaging the patrol car and pedestrian interference. The Seattle Attorney's Office filed charges against Plaintiff, but they were ultimately dismissed.

Plaintiff sued Officer Dyment and the City of Seattle bringing several causes of action: state-law torts of intentional infliction of emotional distress, false arrest, and malicious prosecution, as well as federal 28 U.S.C. § 1983 claims for false arrest and malicious prosecution. Defendants move for summary judgment on the merits and on qualified immunity.

## II. DISCUSSION

### A. False Arrest

Under Washington and federal law, probable cause is a complete defense to an action for false arrest. Probable cause exists if, at the moment of the arrest, the officer had reasonably trustworthy knowledge sufficient to convince a prudent person that the suspect had violated the law. *Orin v. Barclay*, 272 F.3d 1207, 1218 (9th Cir. 2001). Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a person of reasonable caution to believe that a crime has been committed. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). An arrest is reasonable and lawful if the officer had any objectively reasonable basis for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Here, there is a genuine dispute over a material fact rendering summary judgment improper. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Quite simply, the parties dispute what occurred on the night of the collision. A jury could conclude that Plaintiff did not reach out to strike the car and that Officer Dyment had no reason to think that Plaintiff did so. The jury could conclude that Officer Dyment realized that he struck Plaintiff with his patrol car through no fault of Plaintiff's conduct and proceeded to arrest Plaintiff in an attempt to avoid liability and embarrassment from the collision. *See Daniel v. State*, 671 P.2d

802, 804 (Wash. Ct. App. 1983) ("The rule is that unless the evidence conclusively and without contradiction establishes the lawfulness of the arrest, it is a question of fact for the jury to determine whether an arresting officer acted with probable cause."); *see also Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1205–06 (W.D. Wash. 2008) ("The question of whether a police officer had probable cause is generally one of fact."). At this stage, the Court must view the evidence in the light most favorable to Plaintiff. A reasonable jury could conclude that Officer Dyment did not possess probable cause to arrest Plaintiff.

### B. Malicious Prosecution

Under Washington law, Plaintiff must prove the following to sustain a claim of malicious prosecution:

> (1) that the malicious prosecution defendants initiated or continued a principal action; (2) that the malicious prosecution defendants acted without probable cause; (3) that the malicious prosecution defendants acted with malice; (4) that the principal action terminated in favor of the malicious prosecution plaintiff; and (5) that the principal action damaged the malicious prosecution plaintiff.

*Loeffelholz v. Citizens for Leaders with Ethics and Accountability Now*, 82 P.3d 1199, 1215 (Wash. Ct. App. 2004). Defendants allege that Plaintiff cannot show malice or the absence of probable cause. As discussed earlier, there is a genuine issue of material fact regarding the presence of probable cause.

Defendants do no more than allege that Plaintiff cannot show malice. "[T]he element of malice requires proof of wrongful motives or reckless disregard of the rights of an accused." *State v. Chenoweth*, 158 P.3d 595, 603 (Wash. 2007). If the jury concludes that Officer Dyment struck Plaintiff on his own accord and without reasonable belief regarding Plaintiff's alleged striking of the patrol car, the jury could conclude that Office Dyment acted with wrongful motive or a reckless disregard of Plaintiff's rights by arresting and offering false information to the prosecuting attorney. Viewing the evidence in the light most favorable to Plaintiff, the circumstances give rise to an inference that Officer Dyment acted with malice.

Under federal law, a plaintiff must further rebut the presumption that the prosecutor who files the charges does so with independent judgment. *See Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006). A plaintiff may overcome the presumption by showing evidence from which a jury could conclude that the officer procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney. *Id.* at 994. Plaintiff has rebutted that presumption. Although a plaintiff cannot rely solely on his own account of the incident, *id.*, Plaintiff Brumfield relies on the bruising to his arm as well as the witness account of Craig Werner, who described Officer Dyment as "in a panic" and from whose expression after the collision "you could tell he knew he was in the wrong." Mr. Werner also did not understand why Officer Dyment arrested Plaintiff so quickly, implying that Plaintiff had no fault. Although this evidence is strongly disputed by Officer Dyment, a reasonable jury could infer that Officer Dyment's reported information was knowingly false and that it led to Plaintiff's prosecution.

### C. Intentional Infliction of Emotional Distress

To sustain a claim for intentional infliction of emotional distress under Washington law, Plaintiff must prove that Defendants' conduct (1) was extreme and outrageous, (2) was intended to or recklessly inflicted emotional distress, and (3) caused severe emotional distress. *See Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002). Defendants assert that the alleged conduct was not extreme or outrageous and that Plaintiff has shown no evidence of suffering from severe emotional distress. Unless reasonable minds could not differ, these issues are fact questions for a jury. *Id.*

The Court has determined that a jury could conclude that Officer Dyment knowingly arrested Plaintiff without probable cause and pursued prosecution of Plaintiff despite knowing that Plaintiff's conduct was acceptable. If so found, the jury could conclude that Officer Dyment's conduct was extreme and outrageous. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." Restatement (Second) of Torts § 46 (1965); *see also Reid v. Pierce County*, 961 P.2d 333, 337 (Wash. 1988) ("Outrageous conduct is conduct which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" (punctuation omitted)). A jury could conclude that an officer who negligently strikes another with a patrol car and attempts to cover up the act by arresting the pedestrian and seeking charges of property destruction acts in a sufficiently extreme, outrageous, and atrocious manner that the plaintiff may recover for intentional infliction of emotional distress.

Moreover, Defendants contend that Plaintiff was only taken to a nearby precinct, handcuffed for twenty minutes, questioned, and released on his own recognizance. Plaintiff suffered from bruising on his arm and was prescribed Tylenol and ice. Besides the minimal medical treatment, Plaintiff described his only other damages as "not being able to return to Pioneer Square area, bills, stress, loans." Plaintiff maintains the burden of proving severe emotional distress, which involves more than typical stress. *See* Restatement (Second) of Torts § 46 (1965) ("It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity."). However, the conduct at issue may in itself give rise to an inference that the plaintiff suffered from severe emotional distress. *See id.* ("Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."); *see also Kloepfel v. Bokor*, 66 P.3d 630, 636 (Wash. 2003) ("'Emotional distress' includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." (punctuation omitted)). Defendants' emphasis on the absence of significant physical harm is insufficient on a claim for

intentional infliction of emotional distress. *See Kloepfel*, 66 P.3d at 636 ("The rule stated is not, however, limited to cases where there has been bodily harm; and *if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm.*").

There remain sufficient, genuine disputes over material facts regarding Plaintiff's claims of intentional infliction of emotional distress, false arrest, and malicious prosecution. Accordingly, the Court denies Defendants' motion for summary judgment on the merits.[1]

### D. Qualified Immunity

Qualified immunity is immunity from suit. *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009). Qualified immunity protects law-enforcement officers who reasonably believe they are acting lawfully in carrying out their duties, even if mistaken. "[A]n officer will be protected from suit when he or she 'makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances.'" *Id.* (*quoting Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Id.*

To determine whether an officer is entitled to qualified immunity, the Court inquires into whether a constitutional right would have been violated on the facts alleged and whether the right was clearly established. *A.D. v. Markgraf*, 636 F.3d 555, 559 (9th Cir. 2011). The Court's earlier analysis shows Plaintiff has sufficiently alleged that Officer Dyment's conduct, if true, would have violated Plaintiff's constitutional rights.

"In deciding whether the law governing the officer's conduct was clearly established, [the Court] consider[s] whether under that law a reasonable officer could believe the conduct was lawful." *Id.* at 559–60; *see also McKinney v. City of Tukwila*, 13 P.3d 631, 640 (Wash. Ct. App. 2000) ("An officer has state law qualified immunity from suit for false arrest where the officer

---

[1] Plaintiff has not sufficiently pleaded a § 1983 claim against the City of Seattle for instituting a particular policy that led to Officer Dyment's alleged conduct.

1  '(1) carries out a statutory duty, (2) according to procedures dictated to him by statute and
2  superiors, and (3) acts reasonably.'"). The jury could conclude that Officer Dyment knowingly
3  lacked probable cause to arrest Plaintiff and pursue criminal charges, particularly if Plaintiff did
4  not strike the patrol car and Officer Dyment had no reason to believe he did so. If the jury so
5  concludes, then a reasonable officer in Dyment's position could not believe his or her conduct
6  was reasonable or lawful. The Court cannot determine—given the disputed assertions of fact—
7  whether an officer in Officer Dyment's position would have believed that his or her actions were
8  reasonable. A jury must establish what happened. *See, e.g.*, *Wilkins v. City of Oakland*, 350 F.3d
9  949, 955 (9th Cir. 2003) ("The only question for resolution is whether their belief in the
10 necessity of their actions was objectively reasonable. That is, was it reasonable for them not to
11 understand that the person they were shooting was another police officer? Because the answer to
12 that question depends on disputed issues of material fact, it is not a legal inquiry, but rather a
13 question of fact best resolved by a jury."); *id.* at 956 ("Where the officers' entitlement to
14 qualified immunity depends on the resolution of disputed issues of fact in their favor, and against
15 the non-moving party, summary judgment is not appropriate."); *Santos v. Gates*, 287 F.3d 846,
16 855 n.12 (9th Cir. 2002) ("Nevertheless, it is premature to [decide qualified immunity] at this
17 time, because whether the officers may be said to have made a 'reasonable mistake' of fact or
18 law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom.
19 (citation omitted)).
20        //
21        //
22        //
23        //
24        //
25        //
26        //

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment (Dkt. No. 33).

DATED this 12th day of July 2011.

John C. Coughenour
UNITED STATES DISTRICT JUDGE